

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

COREY LAVELLE GREEN,

                   Plaintiff,

v.

M. LIZARRAGA, et al.,

                   Defendants.

Case No.:  22-cv-1175-DMS-MMP

**REPORT AND RECOMMENDATION RECOMMENDING THE COURT GRANT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. Pending before the Court is J. Galindo, M. Lizarraga, and E. Montejano's (collectively "Defendants") Motion for Summary Judgment. ECF No. 71. For the reasons set forth herein, the Court **RECOMMENDS** the Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff is a state prisoner proceeding pro se. His 42 U.S.C. § 1983 action arises from a cell extraction at Centinela State Prison in December 2020. ECF No. 1 at 1, 3.

Plaintiff was in his cell when Defendants entered to perform a cell extraction.[1] Plaintiff alleges this extraction was unlawful and violative of his Eighth Amendment right against excessive force. ECF No. 1 at 2. He describes each of Defendants' actions as follows:[2] (1) Lizarraga "slammed a shield to [Plaintiff's] face" and "when [Plaintiff] fell on [his] bunk, [Lizarraga] started punching [Plaintiff's] face, (2) Galindo punched Plaintiff and then put him in a choke hold "where [Plaintiff] couldn't breathe," and (3) Lizarraga and Galindo acted pursuant to Montejano's orders. ECF Nos. 1 at 3; 71-2 at 37, 51. When Galindo put Plaintiff in a chokehold, Galindo also put his "whole body weight" on top of Plaintiff, who was not resisting and was already face down with his hands behind his back. ECF Nos. 74 at 8; 71-2 at 34–35. At some point, Plaintiff lost consciousness and when he came to, he was handcuffed, in leg restraints, and was not resisting, but both Lizarraga and Galindo were still punching him in the head. ECF Nos. 74 at 9; 71-2 at 38, 52.

As a result of this cell extraction, Plaintiff experienced burst blood vessels in both eyes, partial vision loss, double vision in his right eye, burning in both eyes, a "puncture head wound," headaches, and swelling of his face and eyes. ECF Nos. 74 at 12; 72-1 at 40. Montejano, in addition to ordering the cell extraction, witnessed the incident and declined to intervene. ECF Nos. 74 at 11; 71-2 at 51, 52, 94, 109, 123; 71-3 at 15–16. *But see* ECF No. 71-2 at 36 (Plaintiff acknowledges "the report" says Montejano "wasn't involved" in the cell extraction and Plaintiff "didn't see" Montejano inside his cell). Plaintiff filed his complaint in August 2022 seeking $600,000 in damages and $650,000 in punitive damages arising from this extraction incident. ECF No. 1 at 7.

---

[1] As best the Court can tell, the four-person extraction team was comprised of Defendant Lizarraga and non-parties Garvey, Aguirre, and Castro. ECF No. 71-2 at 110. At some point during the extraction, Defendant Galindo entered the cell. ECF Nos. 71-2 at 111, 123; 71-3 at 16.
[2] Except as otherwise noted, the Court takes the facts as presented by Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion") (citation modified).

Approximately eight months after Plaintiff filed his federal civil case against Defendants, the California Attorney General's Office filed a criminal Information against Plaintiff in Imperial County Superior Court, *People v. Green*, Case No. JCF006108, concerning the same cell extraction. ECF Nos. 1; 32-2 at 5. Plaintiff was charged with: (1) battering Lizarraga; (2) custodial possession of a weapon; and (3) three counts of resisting an executive officer (later revised to two counts involving just Castro and Garvey). ECF No. 32-1 at 2.

In August 2023, the California Attorney General's Office on behalf of Defendants filed a motion to stay Plaintiff's federal case pending resolution of *People v. Green*. ECF No. 32-1. They argued the outcome of Plaintiff's criminal case might bar Plaintiff's federal case under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) or otherwise collaterally estop his federal civil case. ECF No. 32-1 at 3, 4–5. Plaintiff opposed the stay. ECF No. 35. The Court ordered a stay of Plaintiff's federal case in December 2023 pending the resolution of *People v. Green* or until February 2, 2024. ECF No. 40 at 5. Due to continuances in *People v. Green*, the stay was extended until June 27, 2024. ECF Nos. 43; 45; 49; 51; 53.

Plaintiff was convicted of resisting Castro and Garvey under California Penal Code § 69. ECF No. 83 at 6. Subsequently, Centinela State Prison held a disciplinary hearing concerning the December 2020 cell extraction. On January 27, 2025, Plaintiff was found not guilty of attempted murder of Lizarraga and guilty of the "lesser included charge" of "Resisting Staff" under 15 California Code of Regulations (CCR) § 3005(a). ECF No. 71-3 at 12, 15–16. Plaintiff was "sentenced" to a credit loss of 90 days. ECF No. 71-3 at 17, 19. Plaintiff is currently serving an indeterminate 36-year sentence imposed in 2013 with eligibility for parole. ECF No. 71-3 at 23.

Defendants filed their Motion for Summary Judgment in April 2025, and the Court advised Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409

3

(9th Cir. 1988). ECF Nos. 71; 72. Thereafter, Plaintiff filed a response, and Defendants filed a reply. ECF Nos. 74; 78.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To satisfy this burden, the moving party must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the "non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the opposing party is required to tender evidence via affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation modified).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* At the summary judgment stage, courts must "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When the nonmoving party is pro se, the Court has an obligation to construe his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This rule has particular weight in pro se prisoner civil rights cases, where the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates."). The Court is not, however, required to "comb the record to find some reason to deny a motion for summary judgment" simply because a plaintiff is proceeding pro se. *Tran v. California*, 280 F. App'x 653, 653 (9th Cir. 2008) (quoting *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)).

### B.    Discussion

#### a.    The *Heck* Bar and *People v. Green*

*Heck v. Humphrey* prevents individuals convicted of a crime from bringing civil suits for damages if a successful suit would "necessarily imply" the invalidity of their criminal conviction or sentence. 512 U.S. at 486–87. This *Heck* bar is intended to further principles of finality and consistency by foreclosing civil collateral attack of criminal convictions. *Id.* at 485. But if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," there is no *Heck* bar. *Id.* at 487.

At a broad level, California Penal Code § 69 (hereinafter "§ 69") prohibits resisting an officer in the performance (or prospective performance) of his or her duty. In that way, § 69 evaluates not only the criminal defendant's actions but also (sometimes) the actions

of the officer. The Judicial Council of California Criminal Jury Instructions (CALCRIM)[3] explain the offense as follows:

> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant willfully and unlawfully used (violence/ [or] a threat of violence) to try to (prevent/ [or] deter) an executive officer from performing the officer's lawful duty;
>
> 2. When the defendant acted, (he/she) intended to (prevent/ [or] deter) the executive officer from performing the officer's lawful duty;
>
> . . .
>
> AND
>
> (3/4). When the defendant acted, (he/she) knew that the person was an executive officer.
>
> . . .
>
> *<When lawful performance is an issue, give the following paragraph and Instruction 2670, Lawful Performance: Peace Officer.>*
> [A peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force in his or her duties).

Thus, a § 69 conviction contains a limited implication the officer involved in the incident did not use excessive force. *See also Sanders v. City of Pittsburg*, 14 F.4th 968,

---

[3] The Court references the 2024 Judicial Council of California Criminal Jury Instructions (CALCRIM) because Plaintiff was convicted in 2024. These jury instructions can be found at https://courts.ca.gov/sites/default/files/courts/default/2024-12/calcrim_2024_edition.pdf. Because Defendants declined to provide the Court with the jury instructions actually read in *People v. Green*, the Court cannot be sure which iteration of the jury instructions the jury received. This record omission is discussed in more detail below.

971 (9th Cir. 2021) (explaining that because Cal. Penal Code § 148 prohibits resisting an officer during discharge of his duties and excessive force is not within the performance of an officer's duties, "a defendant can't be convicted under § 148(a)(1) if an officer used excessive force at the time of the acts resulting in the conviction"). This implication, however, is limited by temporal constraints. An excessive force claim does not necessarily undermine a criminal conviction for resisting "if the alleged excessive force occurred *before* or *after* the acts that form the basis of the [resisting] violation, even if part of one continuous transaction." *Id.*

### i.    Elemental Analysis of Plaintiff's Conviction in *People v. Green*

The first question *Heck* asks is whether Plaintiff's success in his civil suit would negate an element of Plaintiff's criminal conviction. *Sanders*, 14 F.4th at 970. As outlined above, Plaintiff's December 2020 cell extraction resulted in two court cases—Plaintiff's civil case now before this Court and *People v. Green*, the criminal case against Plaintiff tried in Imperial County. Because Defendants claim *People v. Green*'s outcome governs this case, it is important to address two things at the outset of the *Heck* analysis: (1) the elements of the criminal offense for which Plaintiff was convicted in *People v. Green* and (2) the parties to the civil and criminal cases.

Defendants claim "[i]f Plaintiff succeeds on the merits in this case, it will necessarily negate the elements of Penal Code section 69, rendering [Plaintiff's] conviction invalid." ECF No. 71-1 at 18. The Court first examines the elements of § 69.

Section 69 reads, in relevant part, as follows:

> Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment.

7

1    Thus, § 69 can be violated in one of two ways: (1) attempting by threats or violence

2    to deter or prevent an officer from performing a duty imposed by law or (2) resisting by

3    force or violence an officer in the performance of his or her duty. *People v. Smith*, 303 P.3d

4    368, 373 (Cal. 2013). Since one way to violate § 69 requires the officer to be "in the

5    performance of his or her duty," a guilty verdict under this subsection of § 69 necessitates

6    a finding that the officer involved was "acting lawfully at the time of the offense." *Smith*,

7    303 P.3d at 373. *See also* CALCRIM 2651. In *People v. Green*, Plaintiff was found guilty

8    of two § 69 violations, both of which were charged conjunctively (encompassing both ways

9    Plaintiff could have violated § 69). ECF No. 32-2 at 7–8. Defendants think this answers

10   the mail in the civil case before this Court. Defendants argue if the criminal jury found the

11   officers acted lawfully during the cell extraction, then any civil finding that the officers

12   used excessive force would necessarily invalidate Plaintiff's criminal conviction.

13   However, this conclusion defies both logic and Ninth Circuit precedent.

14       Plaintiff was convicted of § 69 offenses against Garvey and Castro, meaning the

15   criminal jury determined Garvey and Castro acted lawfully. ECF No. 83 at 6. In contrast,

16   Plaintiff's civil complaint alleges unlawful conduct by Lizarraga, Montejano, and Galindo.

17   ECF No. 1 at 2. Accordingly, the criminal jury did not necessarily make a finding that any

18   of the defendants currently before this Court acted lawfully.

19       Nevertheless, Defendants would have the Court hold because Garvey and Castro

20   acted lawfully during the cell extraction, so did Lizarraga, Montejano, and Galindo. This

21   logical leap requires stacking two inferences—first, that Plaintiff's conviction for resisting

22   necessarily invalidates Plaintiff's claim of excessive force against the officers he resisted.

23   As will be discussed in greater detail below, that is not necessarily true. *See, e.g.*, *Jackson*

24   *v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014) ("a plaintiff convicted of resisting arrest could

25   bring a § 1983 action for excessive use of force *if the excessive force was employed against*

26   *him after he had engaged in the conduct that constituted the basis for his conviction*,

27   because in such a case success on his § 1983 action would not imply the invalidity of the

28   conviction") (emphasis added) (citation omitted). Second, Defendants would ask the Court

8

to carry that inference further and find Plaintiff's conviction for resisting (Garvey and Castro) bars claims against officers *he was not convicted of resisting* (Lizarraga, Montejano, and Galindo).

To put this in perspective, the Court follows Defendants' argument to conclusion. Plaintiff was convicted of a § 69 offense against Garvey, which is to say the criminal jury found Plaintiff: (1) attempted by threats or violence to deter Garvey from performing a duty or[4] (2) resisted Garvey by force or violence while Garvey was performing his duty.[5]

In Plaintiff's § 1983 case, he alleges Lizarraga "violated [Plaintiff's] Eighth Amendment with using excessive force, attempt to murder [Plaintiff]." ECF No. 1 at 2. He more specifically alleges Lizarraga "entered [Plaintiff's] cell 212 and slammed a shield into [Plaintiff's] face" and when Plaintiff fell back on his bunk, Lizarraga started punching Plaintiff in the face. ECF No. 1 at 3.

"In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (internal citation omitted). To determine whether the use of force was

---

[4] The Court was not provided the *People v. Green* jury instructions, so it cannot be sure the jury was instructed disjunctively. However, the Court applies the general legal principle cases are charged conjunctively but instructed disjunctively. Whether the jury was instructed conjunctively or disjunctively does not change the Court's ultimate conclusion.
[5] Defendants largely concur with this summation:

> "By finding Plaintiff guilty of resisting Officers Garvey and Castro, the jury determined the prosecution proved the following elements: (1) Plaintiff unlawfully used force or violence to resist Officers Castro and Garvey during the 1–2-minute struggle in Plaintiff's cell; (2) Officers Castro and Garvey were lawfully performing their duties (i.e. they had a legal reason to enter Plaintiff's cell, use force to subdue him, and did not use excessive force); (3) Plaintiff knew Officers Castro and Garvey were executive officers when he resisted; and (4) Plaintiff knew Officers Castro and Garvey were performing their lawful duties when he used force or violence to resist."

ECF No. 71-1 at 19–20.

9

malicious and sadistic, the fact-finder considers the five-factor test set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992): "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Hughes*, 31 F.4th at 1221 (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013)).

Thus, a successful civil claim against Lizarraga may contain findings Plaintiff suffered injury at *Lizarraga's* hands, *Lizarraga* applied more force than was necessary to respond to the threat Plaintiff posed, and *Lizarraga* did not make proper efforts to temper the severity of his force. None of these potential findings invalidate the criminal jury's findings Plaintiff used threats or violence against *Garvey* while *Garvey* was performing his duty (or to deter Garvey from performing his duty).

Finally, Defendants appear to ask the Court to determine the cell extraction team was one unit, thus all their actions were singularly lawful or unlawful. *See, e.g.,* ECF No. 71-1 at 20–21, 24 ("[T]he jury would have to conclude in this civil case that *all the officers* were not lawfully performing their duties and that any force was excessive," and "[i]f any of the officers were using excessive force, the jury would not have found Plaintiff guilty of resisting because *the officers acted simultaneously*") (emphasis added). However, Defendants do not cite anything to support the Court's adoption of this unitary perspective, and the complaint and trial testimony support different Defendants taking distinct actions against Plaintiff during the cell extraction, some which occurred *after* Plaintiff was subdued. Moreover, case law in this area supports even the *same* officer can conduct himself both lawfully and unlawfully during the course of an arrest,[6] so the Court would

---

[6] This Court recognizes a cell extraction is not an arrest. However, most relevant and analogous resistance case law arises in the context of resisting arrest. It is for this reason the Court frequently draws from Cal. Penal Code § 148 case law throughout this Report and Recommendation.

be hard-pressed to hold the *separate* actions of *separate* officers should be lumped together as one. *See, e.g., Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1132 (9th Cir. 2011).

Thus, Defendants' *Heck* argument falls flat from a purely logical, elemental perspective. Defendants' arguments suffer the same fate from a fact-specific, case law perspective.

### ii.    Factual Analysis of Plaintiff's Conviction in *People v. Green*

The second question *Heck* asks is whether Plaintiff alleges facts inconsistent with his conviction. *See Sanders*, 14 F.4th at 970. However, the relevant question is not whether the facts in the criminal case and the facts in the civil case overlap enough to leave room for inconsistent testimony across proceedings. As the Supreme Court reminded us in *Nelson v. Campbell*, *Heck*'s use of the word "necessarily" in the phrase "necessarily imply the invalidity of the conviction" is critical:

> We were careful in *Heck* to stress the importance of the term 'necessarily.' For instance, we acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not *necessarily* imply that the plaintiff's conviction was unlawful.

541 U.S. 637, 646 (2004) (citation modified).

Defendants argue the criminal trial testimony—which led to Plaintiff's § 69 convictions involving Garvey and Castro—is fundamentally at odds with Plaintiff's version of events in his civil case. ECF No. 71-1 at 18. Defendants specifically cite to the following: "Plaintiff alleges that he was never given any orders to: (1) return to his cell; (2) submit to handcuffs; (3) exit his cell; or (4) remove the coverings on his window—despite Officers Garvey, Castro, Lizarraga, Galindo, and Sgt. Tovar testifying otherwise. Plaintiff also argues the officers conducted an illegal cell extraction, without warning, to which he offered no resistance whatsoever." ECF No. 71-1 at 20.

From here, Defendants make a slippery slope argument. Defendants say under Plaintiff's factual recitation of the cell extraction, "the officers would indeed have had no

11

reason to use any force *at all*, let alone conduct a cell extraction," and therefore "if they did use any amount of force when no force was justified, the jury would have to conclude in this civil case that all the officers were not lawfully performing their duties and that any force was excessive." ECF No. 71-1 at 20–21.

Defendants' argument treats summary judgment as an all or nothing game given Defendants' concern a civil jury would be given the opportunity to find the cell extraction illegal. Defendants do not explain why the Court could not grant partial summary judgment in this case as to Plaintiff's illegal cell extraction claim only, leaving Plaintiff's other claims intact. The Court agrees Plaintiff characterizes his cell extraction as "illegal." ECF No. 1 at 3. To the extent this raises a claim there was no cause for the cell extraction (making any use of force by any of the cell extraction team unlawful), the Court agrees summary judgment is appropriate.

However, the Court is not convinced illegal extraction is the core or only claim Plaintiff raises in his complaint, nor that Plaintiff's excessive force claims fail in the absence of his illegal extraction claim.[7] First and foremost, Plaintiff's complaint focuses on the officers' "attempt to murder [him]." ECF No. 1 at 2. Plaintiff describes the officers' individual conduct in the cell in some detail, including Lizarraga "slamming" a shield into his face and Galindo putting him in a chokehold. Plaintiff's complaint currently alleges the cell extraction was "illegal," but it also very clearly alleges the officers involved used excessive force.[8] Plaintiff is a pro se prisoner and, as such, is not expected to raise his

_____

[7] Plaintiff's deposition testimony makes clear Plaintiff thought the cell extraction itself was illegal. ECF No. 71-2 at 24 ("[T]hat's what I'm doing, and now, all of a sudden, they want to have an illegal cell extraction and come in there and harm me"); ECF No. 71-2 at 29 ("They wanted to retaliate on me, and the way they wanted to do it, they wanted to do a cell extraction illegally, and that's what they did").

[8] Plaintiff's opposition supports this reading of his complaint: "Plaintiff contends that after his hands were cuffed behind his back and feet shackled not resisting, Defendants J. Galindo and M. Lizarraga['s] excessive force became unnecessary . . . Defendants'

claims with complete clarity and exact legal terminology. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them").

With any claim of "illegal cell extraction" off the table, what is left are Plaintiff's excessive force claims against Lizarraga, Galindo, and Montejano. Defendants rely on several Ninth Circuit cases in their fact-based *Heck*-bar argument, including *Cunningham v. Gates,* 312 F.3d 1148, 1154 (9th Cir. 2002); *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005); *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012); and *Sanders v. Pittsburg*, 14 F.4th 968 (9th Cir. 2021). The Court adds two more cases to its consideration to round out this Ninth Circuit *Heck* compilation—*Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) and *Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024).

Plaintiff's excessive force claims regarding Lizarraga and Galindo (as well as Defendants' arguments about these claims) are quite similar, so the Court examines these claims together before moving to Plaintiff's claim against Montejano.

### 1. Lizarraga and Galindo's Excessive Force

Plaintiff's version of events has been consistent across his complaint, deposition, and criminal trial.

With regard to Lizarraga, Plaintiff's civil complaint alleges he entered Plaintiff's cell on December 22, 2020, and "attempt[ed] to murder" him by slamming a shield into Plaintiff's face. Then, when Plaintiff fell onto his bunk, Lizarraga began punching Plaintiff in the face. ECF No. 1 at 2–3. During his June 2024 trial in *People v. Green*, Plaintiff testified "Lizarraga had the shield, and Montejano opened the door so quick he came in so fast, and he hit me with the shield. I fell back onto the bunk and hit my nose. And I fell." ECF No. 71-2 at 51. He claimed Lizarraga punched him from the left side while Galindo

excessive force of punching Plaintiff while he was cuffed caused Plaintiff injuries." ECF No. 74-1 at 5, 7.

1    punched him from the right side. ECF No. 71-2 at 51. He stated he lost consciousness and

2    when he came to, he was handcuffed and was still being punched by Lizarraga. ECF No.

3    71-2 at 52. In his December 2024 deposition in this case, Plaintiff testified the same way—

4    that Lizarraga entered and hit him in the face with his shield, Plaintiff fell onto his bunk,

5    then he lost consciousness for a brief time and when he came to, he was in handcuffs and

6    Lizarraga was still punching him. ECF No. 71-2 at 34, 37–38.

7        With regard to Galindo, Plaintiff's testimony is similarly consistent. Plaintiff's

8    complaint alleges Galindo entered Plaintiff's cell on December 22, 2020, and "attempt[ed]

9    to murder" him by punching him and putting him in a chokehold that restricted his

10   breathing and caused blood vessels in his eye to burst. ECF No. 1 at 2–3. At the criminal

11   trial, Plaintiff testified Galindo put him in a head lock in which he could not breathe.

12   Galindo punched him even while Plaintiff's hands were behind his back and he was in a

13   headlock. ECF No. 71-2 at 52. Plaintiff claimed he lost consciousness, and when he came

14   to, he was handcuffed and still being punched by Galindo. ECF No. 71-2 at 52. Plaintiff's

15   December 2024 deposition testimony is more of the same, though it contains more

16   specificity: "He was—he had his—had his left arm around my neck, and he was punching

17   me with his right hand, and Lizarraga was in there punching me . . . I wasn't doing nothing.

18   I wasn't screaming, I wasn't yelling, I wasn't moving." ECF No. 71-2 at 34–35, 38, 40.

19       Defendants point the Court to the ways in which Plaintiff's testimony across

20   proceedings "does not match" his convictions under § 69. However, all of Defendants'

21   allegedly problematic facts relate not to Plaintiff's excessive force claims, but to whether

22   Plaintiff's cell extraction was legal. ECF No. 71-1 at 20. Defendants argue, for instance,

23   "Plaintiff alleges that he was never given any orders to: (1) return to his cell; (2) submit to

24   handcuffs; (3) exit his cell; (4) remove the coverings on his window—despite Officers

25   Garvey, Castro, Lizarraga, Galindo, and Sgt. Tovar testifying otherwise." ECF No. 71-1 at

26   20. Defendants cite *Yount v. City of Sacramento*, 183 P.3d 471, 481 (2008), as support for

27   the notion Plaintiff's claims are *Heck*-barred because Plaintiff alleges illegal extraction and

28   no resistance, but *Yount* only helps Defendants so much.

In *Yount*, the Supreme Court of California addressed a situation in which a civil plaintiff pled no contest to a Cal. Penal Code § 148 offense for resisting arrest but then filed a § 1983 complaint arising out of the same incident. In his civil complaint, the plaintiff alleged the arresting officer lacked probable cause to arrest him and used excessive force by shooting him. *Yount*, 183 P.3d at 479. The state court determined the plaintiff's § 1983 claim was *Heck*-barred to the extent he alleged he did not resist, he posed no reasonable threat to the arresting officers, and the officers had no justification to use any force against him. *Yount*, 183 P.3d at 481. However, to the extent the plaintiff alleged the officer employed excessive force in response to the plaintiff's resistance, the claim was *not Heck*-barred. *Yount*, 183 P.3d at 481. *Yount* unequivocally shut down the idea a California conviction for resisting arrest automatically bars a subsequent civil action for excessive force arising from that arrest:

> Defendants' broad invocation of the *Heck* bar to eliminate Yount's claims in their entirety would also severely diminish the protections available to those subject to arrest. It would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose . . . police subduing a suspect could use as much force as they wanted—as long as the prosecutor could get the plaintiff convicted on a charge of resisting.

*Yount*, 183 P.3d at 482 (citation modified).

So *Yount* does not help Defendants except to take Plaintiff's illegal extraction claim off the table. As discussed above, the Court agrees the criminal jury necessarily determined the officers had cause to conduct a cell extraction. However, the Court does not see how, if Plaintiff succeeds on the merits of his excessive force claims against *Lizarraga* and *Galindo*, that negates the factual basis of his § 69 convictions against *Castro* and *Garvey*. To the extent Defendants rely on *Smith v. City of Hemet*, 394 F.3d 689, 699, n.5 (9th Cir. 2005); *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1045 (9th Cir. 2012); and *Sanders v. Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021) for the proposition that "a jury's verdict necessarily determined the lawfulness of all the officers' actions throughout the whole

course of Plaintiff's conduct, so any action alleging the use of excessive force would necessarily imply the invalidity of his conviction," Defendants have misconstrued the case law. *Smith*, 394 F.3d 699, n.5 (citation modified). The Ninth Circuit expressly disclaimed this dictum in *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022).[9]

This leaves Defendants with one more fact-based *Heck* argument—that all the officers' conduct was part of a "continuous transaction" which the Court cannot "slice up the factual basis of" to avoid a *Heck* bar under *Sanders v. Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021). To make this poorly-developed argument, Defendants cite to *King v. Villegas*, No. 17-cv-00676-JLT-EPG-PC, 2023 WL 4627687 (E.D. Cal. July 19, 2023), seemingly for the proposition that when a plaintiff's civil complaint sets forth facts that conflict with the factual basis for his conviction, the plaintiff's civil claim is barred. *King*, 2023 WL 4627687, at *9. *See also Sanders*, 14 F.4th at 972. Though *King* is non-binding, the Court has nonetheless considered it and finds it distinguishable. *King* involved a no contest plea, not a contested criminal trial. In fact, the central issue in *King* was whether the Court should consider the factual material underlying the factual basis for a no contest plea in its *Heck* analysis. The Court ultimately concluded it should based on the Ninth Circuit's implicit approval of the practice in *Briseno v. City of W. Covina*, No. 22-55100, 2023 WL 2400833, at *19–20 (9th Cir. Mar. 8, 2023) and the language of Fed. R. Evid. 410.

However, there is no plea in this case (making Fed. R. Evid. 410 inapplicable) and the Ninth Circuit has *not* approved of using contested criminal trial testimony in the same manner as the stipulated facts in a no contest plea. The Ninth Circuit recently discussed

---

[9] "That statement was dictum—*Smith* involved a guilty plea, not a jury verdict—and it was decided before the California Supreme Court decided *Yount*. As we have already explained, applying *Heck* requires looking at the factual basis for the conviction . . . And where, as here, a jury is instructed that it may find a defendant guilty based on one of several different events, then a guilty verdict does *not* necessarily 'determine[] the lawfulness of the officers' actions' throughout the entire encounter. We therefore disapprove of that statement in *Smith* . . . [T]he relevant language from *Smith* reappeared in *Beets v. Cnty. of Los Angeles* . . . But again, the statement was dictum." *Lemos*, 40 F.4th at 1008–1009.

how to perform a *Heck* analysis involving contested criminal trial testimony in *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022), a case which Defendants failed to bring to the Court's attention.  In *Lemos*, the Court addressed a situation similar to the one here—a civil plaintiff alleging excessive force during an arrest she was criminally convicted of resisting. Her criminal conviction arose from a contested trial rather than a plea, so the Court grappled with how to handle *Heck* when the civil plaintiff/criminal defendant had not stipulated to the facts underlying her conviction.

The district court in *Lemos* employed the logic Defendants ask the Court to adopt. The *Lemos* district court reasoned the plaintiff's claim was *Heck*-barred because the events giving rise to her criminal conviction and the events giving rise to her civil claim were part of the same "uninterrupted interaction." *Lemos*, 40 F.4th at 1005. Thus, the lower court determined a criminal jury's finding that the officer did not use excessive force "would be inconsistent with a Section 1983 claim based on an event from that same encounter." *Lemos*, 40 F.4th at 1005. The Ninth Circuit reversed.

The Ninth Circuit provided clear instruction on how the *Heck* analysis *should* have occurred in the context of a contested criminal conviction: "[A] court must look at the record of the criminal case—including the jury instructions—to determine which facts the jury *necessarily found*." *Lemos*, 40 F.4th at 1006. In *Lemos*, the jury was instructed it could find Lemos guilty of Cal. Penal Code § 148 based on any one of four actions she committed during the course of her interaction with the officer. *Id.* at 1007. The jury returned a general verdict, so there was no record of which of those four acts the jury thought constituted the Cal. Penal Code § 148 offense. *Id*. Thus, a civil finding of excessive force would not necessarily invalidate Lemos' criminal conviction for resisting arrest. *Id*.

The Court followed up *Lemos* with *Nimer v. Broek*, No. 21-15252, 2024 WL 2269276 (9th Cir. May 20, 2024) and *Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024). Both affirmed the Court's reasoning in *Lemos*. In *Nimer*, the Court reversed the district court's *Heck* grant of summary judgment because the criminal jury that convicted Nimer of aggravated assault did not necessarily reject evidence that those he assaulted continued to

17

use force against him after he was restrained. *Nimer*, 2024 WL 2269276, at *3. And most recently, in *Martell v. Cole*, the Ninth Circuit again reversed a district court's *Heck* dismissal of a plaintiff's excessive force claim arising from an incident for which the plaintiff was criminally convicted pursuant to Cal. Penal Code § 148. Like the lower court in *Lemos*, the lower court in *Martell* reasoned Martell could only avoid a *Heck* bar if his excessive force claim arose from "an isolated factual context within one continuous chain of events" or was "temporally or spatially distinct from the conduct that resulted in his [resisting or obstructing] conviction." *Martell*, 115 F.4th at 1236. The Ninth Circuit again rejected this logic.

Like the plaintiff in *Lemos*, Martell engaged in multiple acts of resistance or obstruction that could have served as the factual basis for his conviction. And Martell's plea agreement recited the elements of Cal. Penal Code § 148 without specifying which act of resistance or obstruction was the basis of the conviction, which left the Court just as bereft of facts as it was in *Lemos* and *Nimer*. *Martell*, 115 F.4th at 1236. In explaining why Martell's claim was not *Heck*-barred, the Court said the following:

> To determine whether a § 148(a)(1) conviction bars a subsequent damages claim for excessive force, a court must look to the particular act or acts for which the plaintiff may have been convicted. The court cannot conclude generally that the plaintiff's conviction was based on the entire incident as a whole, such that a finding of excessive force at any time during the incident would necessarily conflict with the conviction.
>
> We held in *Lemos* that *Heck* does not bar a § 1983 action even when the plaintiff alleges the officer used excessive force during one of several resisting or obstructing acts that "could be the basis for the guilty verdict" *if the record does not show that this particular act was the factual predicate for the plaintiff's § 148(a)(1) conviction*.

*Martell*, 115 F.4th at 1237 (emphasis added) (citation modified).

*Lemos* and *Martell* squarely reject the basis of Defendants' bid for summary judgment in this case. Defendants argue Plaintiff's claim is *Heck*-barred if it arises "out of

18

the same facts" as his criminal conviction or concerns conduct "closely interrelated" to his criminal conviction, but *Martell* expressly rejects that sweeping brush approach. ECF No. 71-1 at 17, 18.

Moreover, *Martell* also says in no uncertain terms for an excessive force claim to be *Heck*-barred, the Court needs to know *which particular act was the factual predicate* of the plaintiff's conviction. 115 F.4th at 1237. The Court must determine which specific act(s) formed the basis for Plaintiff's convictions based on "the record of the criminal case—including the jury instructions." *Lemos*, 40 F.4th at 1006. This is a difficult feat when Defendants have not provided the complete *People v. Green* record. Defendants have provided the Court only with cherry-picked excerpts—approximately 90 of nearly 375 pages of record. ECF Nos. 71-2 at 44–130, 117; 83. Conspicuously missing from this record compilation are the *People v. Green* jury instructions.[10]

The summary judgment burden is on Defendants, and the lack of record in this case is not a pedantic concern. In *Martell*, the Ninth Circuit admonished if there is more than one possible act of resistance, Defendants must provide the Court with record of "the particular act" underlying the conviction so the Court can compare the factual predicate for the criminal conviction against the factual predicate of Plaintiff's excessive force claim.[11] *Martell*, 115 F.4th at 1237.

---

[10] Plaintiff, despite not having the summary judgment burden, has provided some of the jury instructions. ECF No. 74-8 at 1–4. Specifically, Plaintiff provided three instructions relevant to Lizarraga (CALCRIM 915, 2723, and 2671), as well as an instruction pertaining to his weapons possession charge (CALCRIM 2745). ECF No. 74-8 at 1–4. Because these instructions pertain to offenses for which Plaintiff was acquitted, these instructions are not particularly instructive. The Court needs to know what the jury found to convict Plaintiff of § 69 offenses against Castro and Garvey, not necessarily what the jury did not find to acquit Plaintiff of the other charged offenses.

[11] Despite the general quagmire of Ninth Circuit *Heck* case law, it has been the duty of the Court to examine the factual predicate of criminal convictions for quite some time—though not in the manner suggested by Defendants. *See, e.g., Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) ("Because we are unable to determine the factual basis for Smith's

The Court gleans even from the scant records provided there is more than one potential act of resistance. Galindo testified when the cell extraction team entered, Plaintiff "immediately started swinging with his fists." ECF No. 71-2 at 123. During the course of the extraction, Plaintiff was "striking, kicking, doing everything he had to do." *Id*. at 125. It took "multiple officers" to handcuff him because he was "fighting." *Id*. Galindo said the only officer he saw Plaintiff strike was Lizarraga, an offense for which Plaintiff was acquitted. ECF Nos. 71-2 at 125–126; 83 at 5.

Garvey testified Plaintiff was "combative" upon the officers' initial entry to his cell and continued being "combative" when the officers pinned him on his bunk. ECF No. 71-2 at 94–95. Garvey testified Plaintiff kicked him in the left shin, which is presumably the basis for Plaintiff's § 69 conviction for resisting Garvey, though the Court cannot be sure based on the record—or lack thereof—before it. ECF No. 71-2 at 96, 97.

From the testimony excerpts the Court has, the factual basis of Plaintiff's § 69 conviction for resisting Castro is even less clear. Castro testified his extraction team job was to apply hand restraints. ECF No. 71-2 at 110. By the time he tried to apply the restraints, Lizarraga had control of Plaintiff's left hand, Galindo had control of Plaintiff's right hand, and Plaintiff was "pretty much" compliant. ECF No. 71-2 at 111. Castro testified he was unsure whether Plaintiff used force against officers during the cell extraction; Castro merely remembers feeling Plaintiff "push back" against the train of extraction officers. ECF No. 71-2 at 112–13. At some unclear point, Castro "sustained an injury" during the extraction. ECF No. 71-2 at 112–13. The cause of this injury may have

---

plea, his lawsuit does not necessarily imply the invalidity of his conviction and is therefore not barred by *Heck*"). *Lemos* and *Martell* clarified how exactly a court should conduct its analysis, cleaning up previous judicial attempts to create a "temporal connection" bar and clarifying how to conduct the *Heck* analysis when the underlying conviction arises from a contested criminal case. *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022); *Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024).

been clear to the *People v. Green* jury, but it is not clear to this Court based on the record before it.

In short, the Court has been left to guess what act(s) formed the factual basis of Plaintiff's § 69 convictions. Because the case was charged in the conjunctive, there was no special verdict, and the Court has an incomplete record of trial, the Court cannot grant Defendants summary judgment on this ground. It seems unlikely Plaintiff's § 69 convictions against two officers not named in Plaintiff's civil case could *Heck* bar his case for reasons previously discussed. Nevertheless, the Court need not—and should not—speculate, particularly in favor of the moving party. The Court cannot grant summary judgment based on guesswork. Accordingly, though the Court should grant summary judgment as to Plaintiff's claim of illegal cell extraction, it should deny summary judgment as to Plaintiff's excessive force claims against Lizarraga and Galindo.

### 2.    Montejano's Excessive Force

Plaintiff's testimony about Montejano is more disordered than his testimony about Lizarraga and Galindo but is nonetheless mostly consistent. During his June 2024 trial, Plaintiff testified Montejano tried to persuade Plaintiff to participate in a Prison Rape Elimination Act interview, but Plaintiff declined. ECF No. 71-2 at 48. Montejano then walked away from Plaintiff's cell for some time until he opened the cell door for the extraction team. ECF No. 71-2 at 48, 51. In his December 2024 deposition, Plaintiff testified Montejano signaled the cell extraction by hitting the top of Plaintiff's cell door. ECF No. 71-2 at 33. He also testified Montejano ordered the cell extraction and ordered Lizarraga and Galindo to use excessive force. ECF No. 71-2 at 37. This latter allegation is consistent with Plaintiff's complaint, in which he alleged Montejano "attempt[ed] to murder" him by ordering the cell extraction with "ill intent[]" and "command[ing]" his cell extraction team to cause Plaintiff harm. ECF No. 1 at 2–3.

Defendants' summary judgment argument as to Montejano is slightly different than their arguments as to Lizarraga and Galindo. In addition to the summary judgment arguments set forth above, Defendants argue summary judgment should be granted as to

Plaintiff's claims against Montejano because based on Plaintiff's deposition testimony, "it is undisputed that Sgt. Montejano did not use excessive force." ECF No. 71-1 at 24. Defendants round out that argument in their reply, explaining they construe Plaintiff's claim against Montejano to be a "failure to intervene" allegation newly (and wrongly) raised in Plaintiff's response in opposition to summary judgment. ECF No. 78 at 4. Defendants are procedurally correct; an opposition to summary judgment is not the time and place to amend a complaint. However, the Court does not share Defendants' confidence Plaintiff's claim against Montejano fails.

Plaintiff's complaint alleged Montejano "attempt[ed] to murder" him by "command[ing]" his cell extraction team to cause Plaintiff harm. ECF No. 1 at 2–3. Plaintiff did not allege in his complaint Montejano was part of the cell extraction team, and Plaintiff was consistent in his deposition and trial testimony that Montejano's primary role in the extraction was to: (1) order the extraction and (2) open the cell door for the extraction team.

To be sure, Plaintiff attempts to spin his claims in a new direction in his opposition. *See* ECF Nos. 74 at 11; 74-1 at 11 and 15; 74-2 at 10. However, his initial complaint plausibly makes out an excessive force claim against Montejano—not as a direct participant in the use of force but by ordering the cell extraction team to cause Plaintiff harm. *See, e.g., Bell v. Williams*, 108 F.4th 809, 823 (9th Cir. 2024); *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) (noting a supervising officer can be liable under § 1983 if he "sets in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury") (citation modified); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (discussing "integral participation" in § 1983 violations). Defendants' motion for summary judgment does not contemplate this as a legal possibility, so Defendants do not really argue the viability of this excessive force claim against Montejano. Defendants have the burden on summary judgment, and the Court cannot flesh out Defendants' neglected argument for them.

1  That leaves one more component to Defendants' Montejano argument. Defendants
2  argue Plaintiff is the nonmoving party who bears the burden of proof at trial, and as such
3  Defendants "need only prove that there is an absence of evidence to support [Plaintiff's]
4  case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R.
5  Civ. P. 56(c)(1)(B). Defendants argue Plaintiff does not have evidence to support his claim
6  against Montejano because he "has no personal knowledge of Sgt. Montejano's actions or
7  inactions." ECF No. 78 at 5. However, Plaintiff does know Montejano ordered the cell
8  extraction, since Montejano admitted as much in discovery. ECF No. 74-5 at 9. And
9  Plaintiff does know Montejano was present during the cell extraction and opened the cell
10 door, even though Montejano was not part of the extraction team. Defendants selectively
11 cite to portions of Plaintiff's deposition where he says he "can't say Montejano came and
12 did anything to [him]" to argue Plaintiff admitted Montejano was not involved in the
13 alleged excessive force incident. ECF No. 71-1 at 24. But Defendants fail to acknowledge
14 other parts of Plaintiff's deposition: "Lizarraga and—and Galindo used force, excessive
15 force. Montejano, *he ordered them to run inside the cell to do that*." ECF No. 71-2 at 37
16 (emphasis added).

17 To summarize, the Court agrees with Defendants that Plaintiff cannot now transmute
18 his claim against Montejano from an excessive force claim to a failure to intervene claim.
19 However, the Court disagrees with Defendants this completely kills his claim against
20 Montejano. Plaintiff made an excessive force claim against Montejano from the outset of
21 this case. He made this claim based on Montejano's alleged order for Lizarraga and
22 Galindo to use excessive force during Plaintiff's cell extraction. Plaintiff's subsequent trial
23 and deposition testimony is consistent with this claim, and Defendants have not carried
24 their summary judgment burden to defeat it. Accordingly, though the Court should grant
25 summary judgment as to Plaintiff's claim of illegal cell extraction, it should deny summary
26 judgment as to Plaintiff's excessive force claim against Montejano.

27
28

### b.    Plaintiff's Prison Rules Violation Report (RVR)

Setting aside Plaintiff's criminal conviction, Defendants argue Plaintiff's RVR *Heck* bars his civil case. Specifically, Defendants argue Plaintiff's civil case could invalidate his RVR and consequently alter the duration of his sentence. Their argument traces the contours of their *People v. Green*-based *Heck* argument: "If Plaintiff succeeds in this civil case, it will necessarily invalidate his RVR because, in part, Officers Garvey and Castro would not have been performing their legal duties and would not have legal reason to use any amount of force." ECF No. 71-1 at 23. This argument is not entirely accurate.

An RVR can produce a *Heck* bar if the plaintiff's § 1983 claim would necessarily imply the invalidity of the deprivation of good-time credits, since good-time credits can impact the plaintiff's sentence. *Edwards v. Balisok*, 520 U.S. 641, 646–68 (1997). But like a standard, conviction-based *Heck* bar, the bar *only* occurs when the § 1983 claim *necessarily* implicates the invalidity of the disciplinary proceeding that resulted in the RVR. *Muhammed v. Close*, 540 U.S. 749, 754–55 (2004).

In Plaintiff's disciplinary proceeding, he was accused of "attempted murder" of Lizarraga in violation of 15 C.C.R. § 3005(d)(1). ECF No. 71-3 at 8. The RVR incorporated the outcome of *People v. Green*: "[B]ased on the outcome of The People of the State of California vs. Corey Green, [Plaintiff] was found not guilty of felony assault, not guilty of a lesser included battery, not guilty of possession of a weapon in prison, and guilty of two counts of resisting an executive officer with force." ECF No. 71-3 at 16.

The Senior Hearing Officer (SHO) adjudicated Plaintiff not guilty of attempting to murder Lizarraga but found Plaintiff guilty of "the lesser included charge of resisting staff" in violation of 15 C.C.R. § 3005(a). ECF No. 71-3 at 16. Nowhere in the RVR before the Court[12] does it specify what "staff" Plaintiff was convicted of resisting. Since violating 15

---

[12] The Court assumes it does not have the entire RVR because there are internal references in the RVR to other documents not included in the Court's record. *See, e.g.,* ECF No. 71-3 at 17 (listing five "items used as evidence in this hearing").

C.C.R. § 3005(a) is a low bar,[13] there are many potential instances of resistance detailed in the "circumstances of violation" section of the RVR: (1) Plaintiff "refused verbal orders by Sergeant Tovar to stop walking back to his cell and turn around to be placed in handcuffs," (2) Plaintiff "became irate and started to make derogatory statements towards present staff," (3) Plaintiff "refused several orders to submit to handcuffs," (4) Plaintiff "started to apply papers to his assigned cell's door window," (5) Plaintiff responded to Montejano's "direct order to submit to handcuffs" with "Fuck that, come get me!" (6) Plaintiff refused to communicate with staff after being told he needed to respond so the officers could be sure he was alive, (7) Plaintiff ignored Lizarraga's verbal order for Plaintiff to submit to restraints, (8) Plaintiff "took a bladed stance with his fist in the air" when officers entered the cell, (9) Plaintiff "attempted to strike" Lizarraga, (10) Plaintiff ignored Lizarraga's order to "get down, stop resisting," (11) Plaintiff punched Lizarraga's arm, (12) Plaintiff "attack[ed] . . . responding staff," (13) Plaintiff attempted to take Lizarraga's shield, (14) Plaintiff struck Lizarraga's rib cage, (15) Plaintiff struck Lizarraga's left side four times once he was pinned to the bunk, (16) Plaintiff tried to free his left wrist from Lizarraga's grip by "thrashing back and forth violently attempting to break free," (17) Plaintiff ignored Lizarraga's second verbal command to "stop resisting," and (18) Plaintiff "attempted to free himself even after the handcuff was placed on his left wrist [by Castro]." ECF No. 71-3 at 7-8, 15–16.

Even if the Court assumes the RVR's use of the term "lesser included charge" means Plaintiff was adjudicated guilty of "resisting" Lizarraga specifically, that does not whittle

---

[13] 15 C.C.R. § 3005(a) broadly states: "Incarcerated and supervised persons shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person." Contrast this with § 69, which requires much more: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable . . ."

down the list of potential factual bases much. This factual ambiguity is, for reasons already explained, problematic in the *Heck* context.

Defendants only argue the "factual basis" for Plaintiff's civil case is "impossible to square" with the factual underpinning of his RVR. However, the Court has also performed an elemental analysis for the sake of completeness. This elemental analysis not only rounds out the *Heck* analysis, but it also exposes an additional flaw in Defendants' "factual basis" argument.

Defendants copy and paste their criminal conviction-based *Heck* argument into their RVR-based *Heck* argument—forgetting that § 69 and 15 C.C.R. § 3005(a) are elementally very different. Defendants argue if Plaintiff wins his § 1983 case, "it will necessarily invalidate his RVR because, in part, Officers Garvey and Castro would not have been performing their legal duties and would not have a legal reason to use any amount of force." ECF No. 71-1 at 23. But Defendants do not cite any case law for the proposition a violation of 15 C.C.R. § 3005(a) carries with it the inference the involved officers were "in performance of their legal duties" at the time of the incident. To recap, § 69 requires finding the following:

1. The defendant willfully and unlawfully used (violence/ [or] a threat of violence) to try to (prevent/ [or] deter) an executive officer *from performing the officer's lawful duty*;

2. When the defendant acted, (he/she) intended to (prevent/ [or] deter) the executive officer *from performing the officer's lawful duty*;

. . .

[A peace officer *is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force in his or her duties)*]

26

1    2024 Judicial Council of California Criminal Jury Instructions (CALCRIM) (emphasis

2    added).[14]

3    　　　So in finding a criminal defendant guilty of a § 69 violation, the jury has impliedly

4    determined the officer-victim was not using excessive force at the precise time of the § 69

5    offense. However, a 15 C.C.R. § 3005(a) "conviction" does not contain a similar inference.

6    Section 3005(a) does not require a criminal defendant to prevent or deter an officer from

7    performing his or her duty; in fact, it has no relation to an officer's actions at all. Section

8    3005(a) is violated when an incarcerated individual is—in short—defiant, noncompliant,

9    or otherwise disorderly. *See In re Gomez*, 246 Cal. App. 4th 1082, 1096–97 (2016)

10   (interpreting 15 C.C.R. § 3005(a)). In other words, § 69 and 15 C.C.R. § 3005(a) are so

11   elementally dissimilar the Court cannot assume their factual underpinnings meaningfully

12   overlap. And the Court certainly cannot assume Plaintiff's RVR for "resisting [unnamed]

13   staff" would be invalidated by a civil finding that Lizarraga, Galindo, or Montejano used

14   or directed the use of excessive force during Plaintiff's cell extraction—especially when

15   15 C.C.R. § 3005(a) does not even require a finding that Lizarraga, Galindo, and Montejano

16   acted lawfully.

17   　　　As a final note on Defendants' RVR argument, Defendants say invalidating

18   Plaintiff's RVR "would change the duration of [Plaintiff's] sentence, as his 90 days loss of

19   credits would be restored." ECF No. 71-1 at 23. However, Plaintiff is currently serving an

20   indeterminate sentence. ECF Nos. 71-1 at 21, n.4; 71-3 at 23, 25. Defendants have not

21   provided the Court with any case law supporting that invalidation of an RVR—and

22   subsequent restoration of good time credits—would "necessarily imply the invalidity of"

23   Plaintiff's indeterminate sentence for *Heck* purposes. *Cf. Nettles v. Grounds*, 830 F.3d 922,

24   934–35 (9th Cir. 1996) (finding a prisoner serving life seeking to invalidate his RVR should

25   not have brought a habeas claim because "[s]uccess on the merits of Nettles's claim would

26

27   _____

28   [14] These jury instructions can be found at https://courts.ca.gov/sites/default/files/courts/default/2024-12/calcrim_2024_edition.pdf.

not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole").

### c.    Collateral Estoppel

Finally, Defendants argue Plaintiff's cell extraction and excessive force claims are barred by collateral estoppel. ECF No. 71-1 at 23. Federal courts give "the same preclusive effect to state court judgments that those judgments would be given in that state's own courts," so the Court looks to collateral estoppel under California state law. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 326 (9th Cir. 1995).

For collateral estoppel (or "issue preclusion") to apply, five conditions must be met: (1) final adjudication on the merits, (2) of an identical issue, (3) that was actually litigated in the prior proceeding, (4) that was actually decided in the prior proceeding, and (5) that is asserted against one who was a party in the first suit or in privity with that party. *People v. Strong*, 514 P.3d 265, 278 (2022). "It is the burden of the party seeking to prevent relitigation based on prior findings to raise the defense and establish its elements." *Id.*

First, Defendants have not met their burden to establish the elements of collateral estoppel. Defendants did not list the elements of collateral estoppel in their motion, much less walk the Court through how those elements have been met. While failure to meet their burden is sufficient to refuse Defendants summary judgment on collateral estoppel grounds, the Court will briefly analyze the collateral estoppel elements.

*People v. Green* appears to be a final adjudication, and Plaintiff, the party against whom collateral estoppel is being asserted, was a criminal defendant in *People v. Green*. But is the issue for which Defendants seek preclusion identical to the issue in *People v. Green*, actually litigated in *People v. Green*, and actually decided in *People v. Green*? The answer to these questions in relation to Plaintiff's unlawful cell extraction claim may be "yes," but that claim has already been disposed of.

The answer to these questions in relation to Plaintiff's excessive force claims is "no." There are three issues on which Defendants seek preclusion: (1) Did Lizarraga use excessive force against Plaintiff? (2) Did Galindo use excessive force against Plaintiff? and

(3) Did Montejano use excessive force against Plaintiff? These issues are not identical to the issues the jury decided in *People v. Green*, which were: (1) whether Plaintiff battered Lizarraga, (2) whether Plaintiff possessed a weapon, (3) whether Plaintiff resisted Garvey, and (4) whether Plaintiff resisted Castro.

The Court cannot stress enough the overlap between the parties in the relevant civil and criminal cases is minimal. There is only one officer named in both the criminal case (as a victim) and civil case (as a defendant)—Lizarraga. Plaintiff was charged with—and acquitted of—battering or assaulting Lizarraga in his criminal case. Plaintiff was not criminally tried for any offense in connection with the other two individuals named in his complaint (Montejano and Galindo). Given the distinct lack of overlap in parties, the Court cannot infer the *People v. Green* jury "actually decided" whether Lizarraga, Galindo, or Montejano employed excessive force against Plaintiff.  There is also no evidence in the record before the Court these issues were actually litigated. Of the three civil defendants, only Lizarraga's actions should have been a focus in the *People v. Green* litigation. But even then, what was actually litigated was likely whether Plaintiff assaulted Lizarraga, not whether Lizarraga used excessive force against Plaintiff. These two issues may have been intertwined at trial, but the Court cannot say for sure in the absence of a more complete record from Defendants. If anything, the jury's refusal to convict Plaintiff of battering Lizarraga means it is possible the jury believed Lizarraga used excessive force during Plaintiff's cell extraction.

The collateral estoppel argument Defendants actually make is a conclusory statement "the jury found that Plaintiff resisted with force or violence as all four officers attempted to restrain Plaintiff," because "[i]f any one of the officers were using excessive force, the jury would not have found Plaintiff guilty of resisting because the officers acted simultaneously." ECF No. 71-7 at 24. As previously discussed, Defendants do not provide support for their position that if four officers are involved in an incident—whether it be an arrest or a cell extraction—they necessarily act as one indivisible unit such that their actions cannot be examined separately.

1    In support of their collateral estoppel argument, Defendants cite to *McGowan v. City*
2    *of San Diego*, 280 Cal. App. 3d 890 (1989), though they do not explain why. The court in
3    *McGowan* held collateral estoppel may be invoked in the interplay between criminal
4    rulings on motions to suppress and subsequent civil actions, a fact pattern which is not
5    analogous to this case. *Id.* at 896. *McGowan*, however, also says something which does not
6    help Defendants at all—that "any doubt as to what was decided by a prior criminal
7    proceeding should be resolved against using it as an estoppel." *Id.* at 897.

8    As previously discussed, there is quite a bit of doubt as to what the jury necessarily
9    decided in *People v. Green* given the charging scheme, lack of special verdict, and
10   incomplete record before the Court. However, it *is* clear the jury did not find Lizarraga,
11   Montejano, and Galindo used reasonable force against Plaintiff simply by convicting
12   Plaintiff of § 69 offenses against Castro and Garvey.

13   **III.    CONCLUSION**

14   For the foregoing reasons, **IT IS HEREBY RECOMMENDED** the District Judge
15   issue an Order: (1) approving and adopting this Report and Recommendation and (2)
16   **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion for Summary
17   Judgment as follows:

18       a.    Defendants' Motion for Summary Judgment (ECF No. 71) be **GRANTED** as
19             to Plaintiff's illegal extraction claim; and
20       b.    Defendants' Motion for Summary Judgment (ECF No. 71) be **DENIED** as to
21             Plaintiff's excessive force claims against Defendants Lizarraga, Galindo, and
22             Montejano.

23   Within fourteen (14) days from the date of service of these filings and
24   recommendations, any party may file written objections with the court. Such a document
25   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."
26   Any response to the objections shall be served and filed within fourteen (14) days after the
27   objections are filed. The parties are advised failure to file objections within the specified

28

1    time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

2    838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

3        **IT IS SO ORDERED**.

4    Dated:  July 10, 2025

                                        _____
5                                       HON. MICHELLE M. PETTIT
                                        United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28